CLARENCE E. McMANUS, Judge.
 

 \,STATEMENT OF THE CASE
 

 In 1945, Peter A. Morreale started Tulane Industrial Laundry, Inc. (“TIL”), a Louisiana Corporation. On October 5, 1998, Peter A. Morreale resigned as an officer and director of the corporation and executed a stock redemption agreement in order to preserve the closely held nature of the family business. Peter A. Morr-eale’s son, Peter J. Morreale, Sr. (“Morr-eale, Sr.”), then became President and Chief Executive Officer of TIL. Morreale, Sr. wanted his son to eventually operate the business, so he also began estate planning arrangements to ensure his son would become the sole shareholder of the business. Morreale, Sr. began donating TIL stock to his son and on September 4, 1997, Morreale, Sr. executed an act of donation donating the remaining shares of voting common stock to his son. Morreale, Jr. then became the sole owner and CEO of TIL. At the time of the donation, Morr-eale, Sr. was earning a salary of $350,000.00 per year from TIL, plus payment of his personal expenses. Morreale, Sr. alleged there was an oral agreement made between him and his son at the time of the donation in which Morreale, Jr. and TIL would always provide the same amount of funds to Morreale, Sr. as when he owned the company. Morreale, Sr. contended this amount would include payment of all his personal bills. Morreale, Sr. also executed a Deferred Compensation Agreement on September 4, 1997. This ^agreement provided that TIL would pay Morreale, Sr. $120,000.00 per year to be paid in installments of $10,000.00 per month for a period of fifteen years.
 

 From September 24, 1997 until January 2001, TIL made the $10,000.00 payments to Morreale, Sr. pursuant to the deferred compensation agreement and paid Morr-eale, Sr.’s monthly personal expenses. After January 2001, Morreale, Jr. began paying Morreale, Sr.’s personal expenses with his personal funds and increased his own income from TIL to compensate for these payments. Morreale, Jr. discontinued payment of Morreale, Sr.’s monthly personal expenses in August 2002.
 

 On November 24, 2003, Morreale, Sr. filed a petition for damages naming Morr-eale, Jr. and TIL as defendants asserting
 
 *1283
 
 they were required to pay him monthly personal expenses pursuant to the oral agreement which existed.
 

 TIL continued to pay the $10,000.00 monthly payments under the deferred compensation agreement to Morreale, Sr. until December 2005. TIL’s business was affected by Hurricane Katrina, so in November 2005, Morreale, Jr. entered into negotiations with UNIFIRST to sell certain customer contracts. These contracts were sold to UNIFIRST for $2,060,000.00.
 

 On February 23, 2006, Morreale, Sr. filed a second petition against Morreale, Jr. and TIL alleging the defendants had stopped the monthly $10,000.00 payments in breach of the deferred compensation agreement. He claimed he was entitled to past due payments, plus future payments for the remainder of the fifteen years. Morreale, Sr. also claimed Morreale, Jr. was personally liable for these payments because he did not operate TIL as a proper corporation, so TIL’s corporate veil should be pierced.
 

 The two lawsuits were consolidated and trial was held on October 23 and 24, 2007. A judgment and reasons for judgment were issued April 7, 2008 in favor of |,[Morreale, Sr. for $850,000.00. The trial court found that according to the testimony of Ken Weiss, a board certified estate planner, and Harold Asher, a certified public account, the contracts entered into between Morreale, Sr. and Morreale, Jr. were intended to provide Morreale, Sr. with sufficient revenues to fulfill his lifestyle needs and meet his expenses, while also minimizing the taxation on the donation of his interest to Morreale, Jr.
 

 However, Morreale, Sr. had alleged he was owed the personal expenses based on an oral agreement. The trial court found that, according to La. C.C. art. 1846, a verbal contract for an amount in excess of $500.00 must be proven by one witness and other corroborating evidence. The trial court noted the only person to testify regarding this oral contract was Morreale, Sr. and Weiss, the accountant who was present at the execution of the other written contracts on September 4, 1997, who testified he had no knowledge of an oral contract. No other evidence of an oral contract was presented, so the trial court found the testimony presented was not sufficient to prove the existence of an oral contract, and Morreale, Sr.’s claim for payments of his personal expenses for the remainder of his life was denied by the trial court.
 

 With regards to the payments under the deferred compensation agreement, the trial court found it was uncontested that the agreement existed and provided for $10,000.00 monthly payments to Morreale, Sr. until August 2012 and these payments were made until December 2005. However, Morreale, Jr. had claimed Morreale, Sr. had damaged TIL and according to the deferred compensation agreement, TIL had the right to offset against the deferred compensation for any damages Morreale, Sr. caused to TIL. Morreale, Jr. claimed Morreale, Sr. actively began interfering with TIL’s business operations after the payment of his personal expenses ceased. The trial court found no evidence or trial testimony, other than |Bhearsay, to prove that Morreale, Sr. damaged the operations of TIL sufficient to stop payments under the deferred compensation agreement.
 

 The trial court further found no acceleration clause in the agreement, therefore, Morreale, Sr. was due one lump sum for the amount past due from December 2005 until April 2008. The trial court ordered the remaining amounts to be paid in the $10,000.00 monthly installments until August 2012.
 

 
 *1284
 
 Finally, the trial court found the corporate veil of TIL to be pierced and Morr-eale, Jr. to be personally liable for the payments due to Morreale, Sr. The trial court noted the evidence did show Morr-eale, Jr. was attempting to follow certain corporate formalities, however, the court found that over the years, the business affairs of TIL were not conducted on a corporate footing. Additionally, the trial court noted that TIL’s tax return in 2006 reflected a transfer of $1.7 million into Morreale, Jr.’s account. Therefore, the trial court held Morreale, Jr. personally liable for the payments to Morreale, Sr.
 

 On April 22, 2008, Morreale, Sr. filed a motion for new trial regarding the award of legal interest. Morreale, Jr. filed a motion to amend judgment on April 28, 2008. In this motion to amend, Morreale, Jr. argued the judgment should be amended to correct a calculation error by the trial court. Morreale, Jr. alleged the award should have been $810,000.00, not $850,000.00. He also requested a clarification in the wording of the judgment regarding the award of the future payments due after April 2008.
 

 The trial court issued a judgment on July 28, 2008 granting legal interest on the amount due to Morreale, Sr. and granting the motion to amend providing clarification that only $290,000.00 was due as of the date of the judgment, with $10,000.00 due each month from May 7, 2008 until August 7, 2012. The trial court also set forth specifics regarding how interest was to be calculated on the past | (idue amount of $290,000.00. Further, the trial court found no interest owed on the amounts due thereafter.
 

 Morreale, Sr. filed an appeal on June 16, 2008, which was subsequently dismissed. Morreale, Jr. and TIL then filed this current appeal on August 21, 2008. Morreale, Sr. filed an answer to the appeal January 29, 2009. For the reasons which follow, we affirm the trial court’s judgment.
 

 DISCUSSION
 

 On appeal, Morreale, Jr. and TIL argue four assignments of error. First, they argue the trial court erred by imposing liability on TIL for further payments to Morreale, Sr. under the deferred compensation agreement. Second, they argue the trial court committed reversible error by not properly considering testimony regarding Morreale, Sr.’s misconduct and by finding the testimony to be hearsay. Finally, Morreale, Jr. and TIL argue the trial court was clearly wrong in piercing the corporate veil and holding Morreale, Jr. personally liable and for rendering judgment for $850,000.00.
 

 Morreale, Sr. has answered the appeal arguing that the amended judgment be affirmed, and the judgment be modified to order the acceleration of all payments due under the contract and to order payment of the accelerated amount in one lump-sum.
 

 First, Morreale, Jr. and TIL argue they were no longer obligated to make payments to Morreale, Sr. because, pursuant to the deferred compensation agreement, TIL had the right to offset payments for any damages caused to the business by Morreale, Sr. In the trial court, Morreale, Jr. and TIL claimed Morreale, Sr. sexually harassed former employees and further damaged the business after becoming angry his personal monthly expenses were no longer being paid.
 

 |7The trial court found the defendants did not present any testimony, other than hearsay, to support these allegations. The trial court found no real evidence that Morreale, Sr. subverted TIL’s operations such that TIL had the right to stop pay
 
 *1285
 
 ments under the deferred compensation agreement.
 

 After reviewing the evidence and testimonies, we agree with the trial court. The only evidence of any sexual harassment by Morreale, Sr. were statements made by Morreale, Jr.’s wife that he had sexually harassed a former employee. Further, there was no actual evidence presented that Morreale, Sr. had damaged the business. Morreale, Jr. and TIL argue that Morreale, Sr. manipulated invoices and damaged relationships with longstanding customers. In particular, Morreale, Jr. and TIL argue Morreale, Sr. spoke with the representative of Regal Tire, a customer of TIL, and caused Regal Tire to discontinue business with TIL. However, Morreale, Sr. stopped working with TIL in 1997 and Regal Tire continued working with TIL and Morreale, Jr. after that time. Therefore, we find no evidence to prove the allegations that Morreale, Sr. damaged TIL’s relationship with customers or caused Regal Tire, or any other company, to cease doing business with TIL.
 

 Morreale, Jr. and TIL have also claimed that Morreale, Sr. caused UNIFIRST to offer less than market price for TIL’s contracts, following Hurricane Katrina. Again, the only evidence regarding this issue was the testimony of Morreale, Sr. himself that he had spoken to the representative from UNIFIRST around the same time the sale negotiations were taking place. Morreale, Jr. claimed Morreale, Sr. damaged the business negotiations by telling UNIFIRST’s representative of “squabbles” going on between the two family members. Morreale, Sr. specifically testified that he did not do anything to damage the business or reputation of TIL to UNIFIRST. Morreale, Jr. and TIL offered no |sproof at trial that Morreale, Sr. had done anything to diminish the sale price of the customer contracts to UNI-FIRST.
 

 Therefore, we agree with the trial court that the claims made by Morreale, Jr. and TIL only refer to speculations based on hearsay statements. We find no proof that Morreale, Sr. did or said anything to specifically damage TIL’s business by alienating customers or causing a reduction in the sale of the customer contracts to UNIFIRST. Therefore, Morreale, Jr. and TIL were not entitled to an offset on payments to Morreale, Sr. pursuant to the deferred compensation agreement.
 

 Next, we agree with the trial court that Morreale, Jr. be held personally liable to Morreale, Sr. by piercing the corporate veil. LSA-R.S. 12:93(B) states that “[a] shareholder of a corporation organized after January 1, 1929, shall not be liable personally for any debt or liability of the corporation.” However, an individual shareholder can be held personally responsible for the debts of the corporation under very limited circumstances.
 
 Shoemaker v. Giacalone,
 
 34,809 (La.App. 2 Cir. 6/20/01), 793 So.2d 230,
 
 writ denied,
 
 2001-2614 (La.12/14/01), 804 So.2d 632. The determination of whether the corporate veil has been pierced and the corporation is merely the “alter ego” of the shareholder is made by considering the totality of the circumstances.
 
 Id.
 

 TIL was always a family owned business that existed as a corporation. At the time the payments to Morreale, Sr. were stopped, Morreale, Jr. was the sole shareholder of TIL. In piercing the corporation veil of TIL, the trial court found that the business affairs of TIL were not performed on a corporate footing. Specifically, the trial court noted that the 2006 tax return of TIL showed a transfer of $1.7 million from the company to Morreale, Jr.’s personal account. Morreale, Jr. was unable to offer an explanation for this
 
 *1286
 
 transfer. There was other evidence presented to the trial court that demonstrated how company funds were used to pay ^personal expenses. That evidence included the personal expense payments made monthly to Morreale, Sr.
 

 Thus, we find the evidence presented in the trial court supports a finding of personal liability on behalf of Morreale, Jr. and the trial court did not err in piercing the corporate veil.
 

 Finally, we find the trial court correctly amended the original judgment to explain when the payments were due, specifically that the $290,000.00 in past due payments was due as of the date of judgment and the $10,000.00 monthly payments were due beginning in May 2008 and ending in August 2012. We also find the trial court correctly awarded interest and correctly calculated the interest due.
 

 Accordingly, we affirm the trial court’s judgment in favor of Morreale, Sr. for the total amount of $850,000.00, payable in a lump sum of $290,000.00 in past due payments, plus interest as set forth in the trial court’s amended judgment, in addition to payments of $10,000.00 monthly from May 2008 until August 2012. We also affirm the trial court’s judgment piercing the corporate veil of TIL and finding Morreale, Jr., as the sole shareholder, to be personally liable for this judgment.
 

 AFFIRMED.